IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRENDA DAVIDSON,                            :

    Plaintiff,                              :

vs.                                         :      CA 16-0516-KD-C

LIBERTY MUTUAL INSURANCE                    :
COMPANY,
                                            :
    Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and General Local Rule 72(a)(2)(S), on the notice of removal (Doc. 1), plaintiff's motion to remand (Doc. 8), as supplemented (Doc. 10), defendant Liberty Mutual Insurance Company's[1] response in opposition (Doc. 11),[2] and plaintiff's reply to the response in opposition (Doc. 14)[3].[4] Based upon a

---

[1] Hereinafter, the defendant is referred to as "Liberty Mutual."

[2] The defendant has filed an opposition to what it describes as plaintiff's motion to supplement her motion to remand (Doc. 12); however, plaintiff simply filed a supplemental motion to remand (Doc. 10), not a motion to supplement her motion to remand as defendant suggests (Doc. 12). Therefore, there is nothing for this Court to deny, as defendant requests (*see id.* at 4). Regardless, such action is unnecessary because, as made clear *infra*, plaintiff's affidavit in no manner informs the contents of this report and recommendation.

[3] The plaintiff's propounded requests for admission (*see* Doc. 2) do not inform the undersigned's report and recommendation; therefore, the defendant's objection to and motion to strike plaintiff's requests for admission (Doc. 7) is **MOOT**.

[4] Contemporaneously herewith, the undersigned is entering an order cancelling oral argument regarding the motion to remand and motion to strike.

consideration of only those relevant matters before the Court, the Magistrate Judge recommends that the Court **GRANT** plaintiff's motion to remand (Doc. 8).[5]

## FINDINGS OF FACT

The undersigned finds that the following facts are both undisputed and relevant to consideration of the motion to remand. Brenda Davidson filed a two-count complaint against Liberty Mutual Insurance Company in the Circuit Court of Escambia County, Alabama on September 2, 2016—Count 1 alleging Fraud, Negligence/Wantonness and Count 2 alleging Negligent or Wanton Misrepresentation/Suppression—which arises from the sale of her automobile by the storage yard to which it was towed during the pendency of her insurance claim with the defendant following a May 21, 2016[6] automobile accident. (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 5-9.) With respect to Count 1, plaintiff claims the following damages: "Plaintiff paid for insurance coverage with the Defendant that was not provided; Plaintiff lost her vehicle and the use and enjoyment thereof; Plaintiff has suffered severe emotional distress, which continues; Plaintiff has been otherwise injured and damaged. WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory damages and punitive

---

[5] The undersigned's recommendation in this regard is not informed either by the contents of plaintiff's affidavit attached to her supplement to motion to remand (Doc. 10, Exhibit A) or, not surprisingly, *see* n.3, *supra*, by any argument by counsel for plaintiff that Liberty Mutual's counsel has admitted that the amount in controversy in this case is less than $75,000.00 "by attempting to avoid responding to Plaintiff's rightfully issued Requests for Admissions that were directed at the diversity jurisdictional issue only." (Doc. 8, at 1.) Instead, because plaintiff clearly stakes the position in her motion to remand that the amount in controversy in this case is less than $75,000.00 and the defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, the undersigned recommends that this Court find that it lacks subject matter jurisdiction over this matter. In reaching this result, the undersigned has given consideration to paragraphs 1 and 3 of plaintiff's reply to defendant's response in opposition (*see* Doc. 14, at ¶¶ 1 & 3).

[6] On this date, plaintiff struck a deer with her 2015 Camaro SS and her car was rendered inoperable. (Doc. 1, Exhibit A, COMPLAINT, at ¶ 5.)

damages as a jury deems reasonable and may award, plus costs." (*Id.* at 3-4.) As for Count 2, plaintiff also "demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (*Id.* at 4.)

Liberty Mutual removed this action to this Court on October 6, 2016. (Doc. 1.) Therein, the defendant asserts that removal is proper because this Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. With respect to the amount in controversy requirement,[7] the removing party states, in relevant measure, the following:

> 9. In satisfying its burden on removal, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka,* 608 F.3d at 754. To the contrary, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe,* 613 F.3d at 1061-62 (*quoting Pretka,* 608 F.3d at 754). Put simply, "a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount.' Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062 . . . . Here, judicial experience and common sense dictate that the amount in controversy put forth in Plaintiff's Complaint easily exceeds $75,000.00. Out of an abundance of caution, however, Defendant will demonstrate that the amount in controversy is satisfied both through the Complaint and also through additional evidence.[8]
>
> 10. Plaintiff's claims in this case arise from the sale of her automobile by a storage/towing yard. Plaintiff avers that the wrongful sale of her automobile was due to Liberty Mutual's fraudulent,

---

[7] Liberty Mutual points out that plaintiff is a resident citizen of Florida (Doc. 1, at ¶ 2) and that it is a citizen of Massachusetts (*id.* at ¶ 3). Because plaintiff makes no argument to the contrary, it is clear that complete diversity exists.

[8] Interestingly, Liberty Mutual does not attach to the notice of removal such other "evidence"; instead, it simply cites to such other evidence, e.g., Kelley Blue Book websites on the Internet. (*See* Doc. 1, at 6 & n.1.)

intentional, negligent, and/or wanton conduct, or Liberty Mutual's knowingly false representations to the Plaintiff. (*See* Plaintiff's Complaint, at ¶¶ 10, 13, 17). Accordingly, the nature of Plaintiff's alleged damages suggest an amount in excess of the $75,000.00 threshold. After all, Plaintiff's Complaint includes a demand for an unspecified amount of damages for: 1) amounts Plaintiff paid for insurance coverage that was not provided by Liberty Mutual; 2) the loss of Plaintiff's vehicle and the use and enjoyment thereof; 3) Plaintiff's severe emotional distress, which continues; and 4) Plaintiff's other injuries and damages. (*Id.* at ¶¶ 15, 18). A cursory review of automobile values on the websites of the National Automobile Dealers Association and Kelley Blue Book reveals that [] the Plaintiff's 2015 Chevrolet Camaro SS Coupe *may* have been worth anywhere from $22,075 to $27,075, depending on the condition of the vehicle and whether it was offered at private sale or as a trade-in.[9] Furthermore, courts in the Eleventh Circuit have considered a plaintiff's claim for mental anguish or emotional distress in determining the amount in controversy. *See Love v. N. Tool & Equip. Co., Inc.,* 08-20453-CIV, 2008 WL 2955124, [] *5 (S.D. Fla. Aug. 1, 2008);[10] *see also Butler v. Charter*

---

[9] "For example, Kelley Blue Book calculates that the value of a 2015 Chevrolet Camaro SS Coupe with 15,000 miles may be worth approximately $24,238 to $27,075 in a sale to a private party, and approximately $23,456[] to $26,075 in trade-in value, depending on the condition of the vehicle. . . . Similarly, the National Automobile Dealers Association calculates that the value of a 2015 Chevrolet Camaro SS Coupe with 15,000 miles may be worth approximately $22,075 to $26,725, depending on the condition of the vehicle and whether it is a trade-in or sold at retail value." (Doc. 1, at 6 n.1.)

[10] While the Court in *Love* certainly recognized that "[c]ourts have considered plaintiffs' claims for emotional distress damages in determining the amount in controversy[,]" *id.* at *5, it also significantly noted the following:

> Determining the value of Love's emotional distress claim is a difficult task to undertake without a large amount of speculation. Northern Tool suggests that I accept, for purposes of determining the amount in controversy, that Love's emotional distress award will equal her award for back pay based on her base salary alone, i.e., $27,999.00. Northern Tool does not, however, offer any evidence or point to any underlying facts that might support such an assertion. Instead, it cites to cases where courts have awarded emotional distress damages well in excess of Love's $27,999.00 in lost wages without comparing the factual or legal claims made in those cases to Love's claims or explaining the relevance of those awards to the issue at hand. Love, on the other hand, notes that she has not undergone any psychological counseling or medical attention that would make her emotional distress any more significant than the garden variety discrimination claim. A plaintiff need not, however, "introduce evidence of medical treatment to recover for emotional distress . . . under the FCRA." *Brown,* 2005 WL 1126670, at 5 (citing *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1348-49 (11th Cir. 2000)). Although Love may recover some damages for emotional distress, there is no evidence before me to determine that amount. Under these circumstances, I cannot divine some dollar amount as emotional distress

(Continued)

4

*Communications, Inc.,* 755 F.Supp.2d 1192, 1196 (M.D. Ala. 2010).[11] . . . In short, the Court does not need to "suspend reality or shelve common sense" to determine that the Plaintiff's claimed damages for the loss of her 2015 Chevrolet Camaro SS Coupe, severe emotional distress, and the payment of insurance premiums for coverage which was not provided could easily exceed $25,000 to $30,000. []

      11.     Plaintiff also demands punitive damages. Plaintiff's demand for punitive damages is, of course, included in the determination of the amount in controversy. *Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to determine amount in controversy); *Holley Equip. Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered.") . . . ; *see also South Dallas Water Auth. v. Guarantee Co. of North America, USA,* 767 F.Supp.2d 1284, 1303 & n.21 (S.D. Ala. 2011) (holding that the defendant could have "marshaled enough evidence of the jurisdictional facts to support a notice of removal . . . when one considers plaintiff's demand for compensatory and punitive damages"[12]); *Blackwell v. Great American Financial Resources, Inc.,* 620 F.Supp.2d 1289, 1290 (N.D. Ala. 2009) [] ("[I]n determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered unless it is apparent to a legal certainty that such cannot be recovered.") . . . .

---

damages to aggregate to Love's back pay damages so that Northern Tool can meet the jurisdictional threshold for federal diversity jurisdiction.

*Id.* at *5.

    [11]     Plaintiff's claims in *Butler* arose out of a fire that resulted in a total loss of her residence and its contents, *id.* at 1193, and the Court found the following: "The copies of records, which are stated to be from the Macon County Revenue Commissioner's office, indicate that Butler has suffered a property loss of approximately $110,000, even without consideration of the contents of the dwelling. Notably, Butler does not dispute the accuracy of these appraisals. Therefore, the specific facts alleged by the Defendants, and supported by the attachments to the Notice of Removal and opposition to remand, along with the request for additional damages for emotional distress and punitive damages, sufficiently establish that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs." *Id.* at 1196.

    [12]     This is mere dicta, the Court having commented in this footnote, as follows: "That The Guarantee Company could have established the jurisdictional threshold within thirty days of the filing of the complaint is even more apparent when one considers plaintiff's demand for compensatory and punitive damages in Counts II and III of the complaint." *Id.*

5

12. In the recent *Blackwell* decision,[13] the court held that an unspecified claim of punitive damages can be added to fulfill the amount in controversy requirement when the compensatory damages claim alone falls short. 620 F.Supp.2d at 1292. In *Blackwell*, the plaintiffs claimed $23,172.28 in compensatory damages, but also claimed an unspecified amount of punitive damages. *Id.* at 1290. The *Blackwell* court said that "it is the constitutionally-permissible limits of punitive damages in a particular case that are used to compute the jurisdictional amount-in-controversy requirement." *Id.* at 1291. Since the compensatory damages in *Blackwell* were already $23,172.28, the court held that "a punitive award of slightly more than double the compensatory damages claim . . . is uncontroversially (sic) within the limits of the Due Process Clause." *Id.* Therefore, since that was all that was needed to reach the required amount in controversy, the court found that it had diversity jurisdiction. *Id.* at 1292.

13. The holding in *Blackwell* is squarely on point here and helpful to the Court's analysis in this case. Plaintiff[] claim[s] an unspecified amount of punitive damages, which, under *Blackwell*, should be calculated up to "the constitutionally permissible limits." *Id.* In this case, even if Plaintiff's potential compensatory damages for the loss of her 2015 Chevrolet Camaro SS Coupe, severe emotional distress, and the payment of insurance premiums for coverage which allegedly was not provided totaled only $25,000[.]00 or $30,000.00 (which is highly unlikely, given the potential value of the Plaintiff's vehicle as discussed above), utilizing the *Blackwell* analysis those amounts would be sufficient to reach the jurisdictional floor using Plaintiff's punitive damages claim.[14]

14. The amount in controversy in this case exceeds the $75,000 statutory threshold. Plaintiff has alleged the loss of a 2015 Chevrolet Camaro SS Coupe and severe emotional distress, along with a claim for unspecified punitive damages, which would support a potential recovery

---

[13] In *Blackwell*, in contrast to the instant case, there was no dispute but that "the core compensatory damages sought by the plaintiff are $23,172.28 in 'surrender charges' withheld by defendants because of plaintiff's termination of the annuities contracts." 620 F.Supp.2d at 1290. Here, there is no similar "undisputed" amount of damages which plaintiff seeks; instead, reaching some "solid" number requires this Court to engage in speculation.

[14] In *Love, supra*, the Court made the following interesting observations with respect to punitive damages: "Northern Tool has not introduced any evidence on which to base any calculation of punitive damages in this case. For example, it did not introduce evidence of jury verdicts with respect to punitive damages in similar cases. It also has not explained why the facts in this case would support a large punitive damages award. Under these circumstances, I find that Northern Tool has not met its burden to prove by a preponderance of the evidence that Love will recover $100,000.00 [under the Florida Civil Rights Act] or any other amount in punitive damages." *Id.* at *6.

> in excess of the requisite amount. Taking into account these alleged damages, it is beyond clear that Defendant Liberty Mutual has met its burden of proving the amount in controversy exceeds the $75,000.00 requirement.

(*Id.* at 5-9 (emphasis supplied; certain footnotes added).)

Plaintiff timely filed her motion to remand on November 7, 2016, and therein asserts that the amount in controversy in this case "is less than $75,000.00, which is the jurisdictional limit of this Court pursuant to 28 U.S.C. § 1332[.]"(Doc. 8, at 1.)[15]

In its response in opposition, Liberty Mutual has addressed at some length the requests for admission "issue" (*see* Doc. 11, at 4-7); however, since, as aforesaid, the undersigned's report and recommendation is not informed by the argument that defense counsel has admitted that the amount in controversy in this case is less than $75,000.00 by attempting to avoid responding to plaintiff's propounded requests for admission, the undersigned finds no reason to address this portion of the defendant's response in opposition. The first few pages of the response in opposition are directed to a "condensed" version of the contents of the notice of removal (*compare* Doc. 11, at 1-4 *with* Doc. 1, at 1-3 & 4-9) and, therefore, the undersigned only "highlights" the condensed version, as follows:

> 4.  In light of the fact that Plaintiff has made claims for compensatory, mental anguish or emotional distress, and punitive damages in connection with the alleged complete loss of her 2015 Chevrolet Camaro SS, the amount in controversy exceeds the jurisdictional floor. *See Love v. N. Tool & Equip. Co., Inc.,* 08-20453-CIV, 2008 WL 2955124, [] *5 (S.D. Fla. Aug. 1, 2008) (discussing mental anguish/emotional distress damages); *see also Butler v. Charter Communications, Inc.,* 755 F.Supp.2d 1192, 1196 (M.D. Ala. 2010) ("[T]he specific facts alleged by Defendants, and supported by the attachments to

---

[15] Plaintiff supplemented her motion to remand, on November 16, 2016, with her sworn affidavit. (*See* Doc. 10.) However, because, as aforesaid, the contents of Davidson's affidavit are not relevant to this Court's jurisdictional analysis, they are not delineated herein.

> the Notice of Removal and opposition to remand, along with requests for additional damages for emotional distress and punitive damages, specifically establish the amount in controversy exceeds $75,000.00, exclusive of interests and costs."); *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to determine amount in controversy); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered.") . . .; [] *South Dallas Water Auth. v. Guarantee Co. of North America, USA,* 767 F.Supp.2d 1284, 1303 & n.21 (S.D. Ala. 2011) (holding that the defendant could have "marshaled enough evidence of the jurisdictional facts to support a notice of removal . . . when one considers plaintiff's demand for compensatory and punitive damages"); *Blackwell v. Great American Financial Resources, Inc.,* 620 F.Supp.2d 1289, 1290 (N.D. Ala. 2009).
>
> 5.     Furthermore, as discussed at length in the Notice of Removal (Doc. 1), the recent *Blackwell* decision is squarely on point here and helpful to the Court's analysis in this case. . . .

(Doc. 11, at 2-3.)

Plaintiff timely filed her reply to defendant's response in opposition on December 6, 2016. (Doc. 14.) Plaintiff's reply reads, in relevant measure, as follows:

> 1.     The statutes governing removal are to be strictly construed against removal and in favor of state court jurisdiction. *See* <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941); *see also* <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092 (11th Cir. 1994). Plaintiff's allegations must be evaluated most favorably to the Plaintiff, and all uncertainty or contested facts must be resolved in favor of the Plaintiff. *See* <u>Pacheco de Perez v. AT&T</u>, 139 F.3d 1368[ ,] 1373 (11th Cir. 1998) . . . . *The party invoking the removal jurisdiction of a federal court bears the burden of establishing federal jurisdiction by a preponderance of the evidence. See* <u>Pacheco de Perez v. AT&T</u>, 139 F.3d 1368[ ,] 1373 (11th Cir. 1998) (emphasis added) . . . .
>
> .   .   .
>
> 3.     Defendant[,] in its Response[,] . . . directed the Court to <u>Blackwell v. Great American Financial Resources, Inc.</u>, 620 F.Supp.2d 1289, 1290 (N.D. Ala. 2009), and said it was "on point" with the instant case. However, Defendant Liberty Mutual forgot to mention that <u>Blackwell</u>'s reasoning has been <u>rejected</u> by other United States District Courts in Alabama that have held that the <u>Blackwell</u> reasoning "fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principal (sic) that a federal court should construe its removal jurisdiction narrowly" and have stated

8

      that applying even a "single digit multiplier" to the amount of compensatory damages "assumed away" the removing party's burden to prove the propriety of the removal by a preponderance of the evidence as required by § 1446. Mustafa v. Market Street Mortgage Corp., 840 F.Supp.2d 1287, 1291 (M.D. Ala. 2012); *see also* Arrington v. State Farm Fire & Cas. Co., Docket No. 2:14-cv-2090-CSC at *6 (M.D. Ala. 2014); Benton v. State Farm Fire & Cas. Co., Docket No. 2:14-cv-77-CSC at *4-5 (M.D. Ala. 2014) (both rejecting Blackwell); and Dean v. Sears Roebuck & Co., Docket No. CA-13-00487-C at *6 (S.D. Ala. 2014) (noting that attempting to place a value on a claim for punitive damages would require the court to engage in "pure speculation").

(*Id.* at ¶¶ 1 & 3 (emphasis in original).)

## CONCLUSIONS OF LAW

**A.    Jurisdiction in General.**

The removing defendant "must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction." *Whitney Nat'l Bank v. Lakewood Investors,* 2011 WL 3267160, *2 (S.D. Ala. Jul. 28, 2011), citing *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294 (11th Cir. 2008) and *Friedman v. New York Life Ins. Co.,* 410 F.3d 1350, 1353 (11th Cir. 2005). Moreover, "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies

9

outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). Indeed, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court." *Brown v. Endo Pharmaceuticals, Inc.*, 38 F.Supp.3d 1312, 1318 (S.D. Ala. 2014) (citation omitted); *see also University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *Federal Deposit Ins. Corp. ex rel. Colonial Bank v. Banc of America Funding Corp.*, 2013 WL 3968017, *1 (M.D. Ala. Aug. 1, 2013) ("[I]n actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of establishing federal jurisdiction on the defendant.").

## B. <u>Diversity Jurisdiction.</u>

The removing party predicates removal jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332 (Doc. 1, at 3-9),[16] and, therefore, Liberty Mutual bears the burden of establishing complete diversity of citizenship, that is, that the plaintiff is diverse from the defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d

---

[16] Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).

10

1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *see also Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) ("If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement.'"); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) ("[W]here jurisdiction is based on a claim for indeterminate damages, . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum.").

      C.      **Whether the Amount in Controversy Has Been Satisfied.**

Mere diversity of citizenship is not sufficient to create jurisdiction under § 1332 since "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted). And, "[w]hen, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Pate v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 3372195, *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald v. Besam Automated Entrance Systems*, 282 F.Supp.2d 1309, 1314 (S.D. Ala. 2003) ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by

11

plaintiff's counsel that would be entitled to deference."), *aff'd,* 107 Fed.Appx. 893 (11th Cir. Jun. 4, 2004). Because the defendant removed this case under the first paragraph of Section 1446(b)[17] (*see* Doc. 1, ¶¶ 6-7 ("28 U.S.C. § 1446(b) allows for removal of a civil action within thirty days after receipt by the Defendant of a copy of the initial pleading setting forth the claims for relief. [] Liberty Mutual was served with the Complaint in this action on September 6, 2016. . . . This Notice of Removal is filed within thirty days of September 6, 2016.")), the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the undersigned's analysis. *See id.* at 1062

---

[17]   The first paragraph of 28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.* Of course, Congress, through § 1446(b), has established a "bifurcated removal approach," *Lee v. Lilly Trucking of Virginia, Inc.*, 2012 WL 960989, *1 (M.D. Ala. Mar. 21, 2012), under which

> a state court defendant may remove a case to federal court at two procedurally distinct moments in time. First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, § 1446(b)(1) provides the procedure for removal. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Such a removal must be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based . . . ." § 1446(b)(1). However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." § 1446(b)(3); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

*Id.*

(characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand"). In *Roe*, the Eleventh Circuit stated:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir.2010).] Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)); s*ee also Williams*[*v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-1062.

The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits[,]" *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000). *See* 613 F.3d at 1062-1063. *Luckett* and *Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharmaceuticals USA, Inc.*, 2008 WL

13

686996, *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000"). Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which the plaintiff does not make a specific damages demand—such as this one—a district court may employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy." *Roe*, 613 F.3d at 1063.

With these principles in mind, the undersigned considers Liberty Mutual's arguments that "judicial experience and common sense dictate that the amount in controversy put forth in [p]laintiff's [c]omplaint *easily* exceeds $75,000.00[]" (Doc. 1, at ¶ 9 (emphasis supplied)), and that it has demonstrated "that the amount in controversy is satisfied both through the complaint and also through additional evidence." (Doc. 1, at 5-6.) In this latter regard, the defendant attempts to demonstrate the value of plaintiff's vehicle through Internet websites and then combine that "value" with her claims for emotional distress and punitive damages to "satisfy" the $75,000 threshold. (*See id.* at 6-8.)

Initially, the Magistrate Judge understands Liberty Mutual to be arguing that Davidson's requests for compensatory damages (including damages for severe emotional distress, damages for loss of her vehicle, etc.) and punitive damages as to all her claims clearly push the amount in controversy above the $75,000 threshold. (*See* Doc. 1, at ¶ 9.) In *Robinson v. Clayton*, 2012 WL 6028940, *2 (S.D. Ala. Dec. 3, 2012), this Court specifically determined that "merely listing categories of damage[,]" which is

14

exactly what Liberty Mutual purports to do in this case (*see* Doc. 1, at 5-7), does not satisfy the removing defendant's burden of establishing that the amount in controversy exceeds the $75,000 threshold. In reaching this conclusion, this Court favorably cited the conclusion in *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1318 & 1320 (11th Cir. 2001) ("allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer those damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000"), while parenthetically noting that "*Williams* is a governing application" of the governing principles set forth in *Roe* and *Pretka* and that *Williams* "was not overruled by *Pretka* or *Roe* (nor could it have been, given that *Pretka* and *Roe* were not en banc opinions)." *Robinson, supra,* at *2 & n.1. Based upon *Williams* and *Robinson*, therefore, the undersigned **RECOMMENDS** that the Court conclude that the allegations here that plaintiff was caused to pay for insurance coverage that was not provided, lost her vehicle and the use and enjoyment thereof, was caused to suffer severe emotional distress, along with a demand for both compensatory and punitive damages, do not render it facially apparent that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. *Cf. Lambeth v. Peterbilt Motors Co.*, 2012 WL 1712692, *3 (S.D. Ala. May 15, 2012) ("While the back injury is characterized as 'serious,' nothing in the Complaint elaborates on the nature or severity of that injury, or otherwise lends substance or meaning to it. We simply do not know—or have any basis for inferring from the pleadings—anything about how severe, permanent, debilitating or painful the injury might be; how extensive, costly, or traumatic the course of treatment was, is or might be; or whether and to what extent the

injury did, does or will constrain [the plaintiff's] work or life activities."); *Hill v. Toys "R" Us, Inc.*, 2010 WL 3834532, *1-3 (S.D. Ala. Sept. 24, 2010) (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm and head injuries; that she has experienced and continues to experience pain and suffering, emotional distress, and mental anguish; and that she has incurred ongoing medical expenses). In other words, contrary to the removing party's specific argument, the undersigned's judicial experience and common sense does not dictate that the amount in controversy in Davidson's complaint *easily* exceeds $75,000.00, exclusive of interest and costs.[18]

In addition to the foregoing, to the extent defendant claims it has demonstrated that the amount in controversy exceeds the jurisdictional threshold, the undersigned cannot agree. The plaintiff's allegations of mental anguish and emotional distress are too vague and speculative for the undersigned to find that the plaintiff's claims surpass the jurisdictional threshold.[19] *See Mustafa v. Market Street Mortgage Co.*, 840 F.Supp.2d

---

[18] Indeed, the undersigned's judicial experience and common sense dictates the opposite of what the removing party asserts, that is, the amount in controversy put forth in plaintiff's complaint does not exceed $75,000.00. After all, plaintiff makes no claim for any physical injury to herself; instead, at bottom, all that is involved is plaintiff's loss of her vehicle and damages attendant thereto.

[19] Liberty Mutual attempts to establish the value of plaintiff's 2015 Chevrolet Camaro SS Coupe by citing to various websites. (*See* Doc. 1, at 6.) Initially, the undersigned would note that the defendant appears to recognize that its attempt to value plaintiff's vehicle is speculative. (*See* Doc. 1, at ¶ 10 & n.1 ("A cursory review of automobile values on the websites of the National Automobile Dealers Association and Kelley Blue Book reveals that [] the [p]laintiff's 2015 Chevrolet Camaro SS Coupe *may have been worth* anywhere from $22,075 to $27,075, *depending on the condition of the vehicle* and whether it was offered at private sale or as a trade-in. [] For example, Kelley Blue Book calculates that the value of a 2015 Chevrolet Camaro SS Coupe with *15,000 miles may* be worth approximately $24,238 to $27,075 in a sale to a private party, and approximately $23,456[] to $26,075 in trade-in value, *depending on the condition of the vehicle*. . . . Similarly, the National Automobile Dealers Association calculates that the value of a 2015 Chevrolet Camaro SS Coupe with *15,000 miles may* be worth approximately $22,075 to $26,725, *depending on the condition of the vehicle* and whether it is a trade-in or sold at retail value." (emphasis supplied)).) Even without an implicit admission, (Continued)

1287, 1291 (M.D. Ala. 2012) (concluding that the Court could not make a non-speculative estimate of the value of the plaintiff's mental anguish claim); *Goodin v. Fidelity Nat'l Title Ins. Co.*, 2012 WL 473913, *3 (M.D. Fla. Feb. 14, 2012) (finding that "[plaintiff's] allegations of 'mental anguish and stress' are impermissibly vague"), *aff'd*, 491 Fed.Appx. 139 (11th Cir. Oct. 4, 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2810, 186 L.Ed.2d 862 (2013). Indeed, Davidson's complaint, like the complaint in *Arrington v. State Farm Ins. Co.*, 2014 WL 2961104 (M.D. Ala. Jul. 1, 2014), "contains no specific allegations from which one could draw any reasonable inference regarding the extent of the [plaintiff's] mental anguish [or] emotional distress," and, as in *Arrington*, "[i]n [this] court's 'judicial experience,' mental anguish and emotional distress damages in cases such as this vary widely depending on the circumstances, and even very similar circumstances may affect different plaintiffs in different ways." *Id.* at *6. Thus, the undersigned declines to "indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show." *Id.*, citing *Roe, supra,* 613 F.3d at 1061; *see Pretka v. Kolter City Plaza, II, Inc.*, 608 F.3d 744, 753-754 (11th Cir. 2010) ("[W]ithout facts or specific allegations, the amount in

---

however, the undersigned finds this attempted "valuation" to be unhelpful speculation not only because the defendant has provided no foundation for this Court to determine the miles plaintiff's vehicle had logged as of the date of her accident on May 21, 2016 (the 15,000 miles utilized by defendant having been "plucked" out of thin air) but, as well, because the removal petition provides no foundation for a determination that at that time (or when plaintiff's vehicle was sold by the storage yard on July 14, 2016) plaintiff's vehicle was in "good" condition, much less "excellent" condition (*see* Doc. 1, at 6 n.1 (defendant's Kelley Blue Book "search" identified the vehicle as being in excellent condition)). At bottom, this Court simply has no basis to make a non-speculative estimate of the value of plaintiff's loss of vehicle claim and, therefore, it should not "indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show." *Arrington, infra,* at *6, citing *Roe, supra,* 613 F.3d at 1061.

17

controversy could be 'divined [only] by looking at the stars'—only through speculation—and that is impermissible.").

And, finally, while punitive damages claims should be considered when evaluating whether the value of a case exceeds $75,000, "there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth, supra*, at *4. Here, the undersigned cannot estimate the value of the plaintiff's punitive damages claims without engaging in pure speculation, *see Mustafa*, 840 F.Supp.2d at 1291, an endeavor which *Roe* and *Pretka* eschew, *see, e.g.,* 608 F.3d at 754.

The undersigned recognizes that, in *Blackwell, supra,* one judge in the Northern District of Alabama determined that where the plaintiff alleged $23,172.28 in compensatory damages, "a punitive award of slightly more than double the compensatory damages claim would occasion an amount in controversy that exceeds the jurisdictional minimum. Such an amount for punitive damages is uncontroversially within the limits of the Due Process Clause." 620 F.Supp.2d at 1291. Accordingly, that court concluded that the punitive damages claims in that case established the jurisdictional requirements with regard to the amount in controversy. *Id.* at 1291-1292.

However, the undersigned declines to follow the reasoning in *Blackwell* and, instead, follows the reasoning of the Middle District of Alabama in *Mustafa*, where it declined to apply a multiplier to the plaintiff's $19,444.33 in compensatory damages when evaluating the plaintiff's mental anguish and punitive damages claims. *Mustafa*, 840 F.Supp.2d at 1291-1292. In *Mustafa,* the Middle District considered the analysis in *Blackwell*, but determined that it would be inappropriate for the court to evaluate punitive damages claims by applying multipliers to compensatory damages claims. *Id.* The Middle District stated as follows:

18

>       This Court finds *Blackwell* unpersuasive, however, for it fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principle that a federal court should construe its removal jurisdiction[] narrowly. First, applying a single digit multiplier sufficiently high to satisfy the amount-in-controversy requirement, without more, assumes away the removing party's burden to prove the propriety of removal by a preponderance of the evidence. Second, it also ignores the Eleventh Circuit's command in *Lowery v. Alabama Power Company* to look at the facts supporting a damages assertion, because "the existence of jurisdiction should not be divined by looking to the stars." 483 F.3d 1184 (11th Cir. 2007). Woodenly applying a single digit multiple of the compensatory damages claimed, without a non-speculative reason to believe the jury would come back with such an award, violates *Lowery's* explicit commands and is not a reasonable extrapolation from the pleadings under *Roe*. Third, assuming a punitive damages award of up to nine times compensatory damages (likely the highest multiplier that comports with due process) ignores the principle that courts should construe the remand statutes narrowly so as to resolve jurisdictional uncertainties in favor of remand. *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, using a multiplier, without more, would trigger grave federalism concerns: cases with compensatory damages of just $8,333.33 could begin finding their way into federal court, thus usurping the States' jurisdiction over all but the smallest claims.

*Id.* Like the court in *Mustafa*, the undersigned declines to evaluate the plaintiff's punitive damages claim by applying a multiplier to the plaintiff's compensatory damages, particularly since plaintiff makes no specific claim for compensatory damages. Indeed, applying a multiplier in this case would require "double" speculation by this Court. Therefore, the undersigned simply reiterates that the value of plaintiff's punitive damages claims cannot be estimated without engaging in impermissible speculation.

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 8) be **GRANTED** and that this cause be remanded to the Circuit Court of Escambia County, Alabama from whence it came.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 8th day of December, 2016.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**